FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

2014 JUN 25 P 4: 32

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| HAMPTON BROWN | ) |
| CHAUNDRA HUTCHINSON | ) |
| JAMES TIMBERLAKE | ) |
| LASHUN WILLIAMS | ) |
| PHYLLIS WATSON, *on behalf of themselves* | ) |
| *and all others similarly situated* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. |
| | ) |
| CAVALRY PORTFOLIO SERVICES, LLC | )    3:14-CV-00466/JRS |
| | ) |
|      SERVE:      CT Corporation System | ) |
|                  4701 Cox Rd., Ste. 285 | ) |
|                  Glen Allen, VA 23060 | ) |
| | ) |
|    Defendant. | ) |

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, Hampton Brown, Chaundra Hutchinson, James Timberlake, Lashun Williams, and Phyllis Watson, on behalf of themselves and all others similarly situated, by counsel, and as for their Complaint against the Defendant, they allege as follows:

1.      This is an action for actual and statutory damages, costs, and attorneys' fees brought pursuant to 15 U.S.C. § 1692, *et seq.* (the Fair Debt Collection Practices Act or "FDCPA") and for the Defendant's abuse of process.

## JURISDICTION

2.      Jurisdiction is proper pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1367.

**PARTIES**

3.      Plaintiffs are each a natural person who resides in the Commonwealth of Virginia and at all times relevant to this Complaint each was a "consumer" as that term is defined by the FDCPA.

4.      Defendant Cavalry Portfolio Services, LLC, ("CPS"), is a Delaware limited liability company with its headquarters and principal place of business located in Valhalla, New York.  It regularly collects debts from consumers located across the Commonwealth of Virginia. At all times relevant to this Complaint, CPS was a "debt collector" as that term is defined by the FDCPA.

**STATEMENT OF FACTS**

**Facts Common to All Plaintiffs**

5.      CPS is a debt-buyer and a debt collector as that term is defined at 15 U.S.C. § 1692a(6).

6.      CPS accomplishes its debt-buying operation by purchasing multiple multi-million dollar portfolios of distressed and charged-off consumer debt from original creditors.  Many of these debts are credit card accounts.

7.      CPS uses two employee-less paper entities that hold technical ownership of these charged-off debt portfolios, Cavalry SPV I, LLC and Cavalry SPV II. However, it is CPS that operates as the front for contact with the targeted debtor-consumers, calling itself the "servicer" of its collection accounts.

8.      CPS sends accounts owned by Cavalry SPV I, LLC and Cavalry SPV II to litigation, interacts with its debt collection attorneys, and endorses the documentation used in litigation.

2

9.     To aid in litigation against consumers, CPS has established relationships with many different debt collection law firms in the country who serve less in the capacity as traditional legal counsel, and more as an outsource vendor, including Kramer, Linkie, & Taylor, LLC.

10.    CPS uses these third party law firms and the General District Courts in the Commonwealth of Virginia, as well as courts across the country, as a means to collect the purchased debts from consumers in a manner that does not comply with Virginia or federal law.

11.    As an example of one such violation, CPS submits affidavits with the warrant in debts that it files in the Virginia General District Courts. The affidavits are also mailed to consumers at the time that the warrant in debt is filed with the general district court.

12.    These affidavits falsely represent that the consumer owes a principal balance that does not contain any interest charges. The Defendant makes these representations because it is a debt buyer, sometimes several entities removed from the original creditor and routinely does not know which portion of the alleged debt is principal and which is interest.  In reality, every stale credit card account that the Defendant purports to have purchased consists of finance charges in some portion.

13.    Upon information and belief, CPS uses the same or substantially similar affidavits in all Virginia General District Court cases that it files. None of these affidavits contain an accurate distinction between the principal balance and the finance charges.

**Defendant's Specific Collection Conduct Regarding Hampton Brown**

14.    The Defendant contends that Plaintiff Brown incurred one or more financial obligations that were primarily for personal, family or household purposes.

3

15. These alleged debts were consigned, placed or otherwise transferred to Defendant for collection from Plaintiff Brown.

16. In an attempt to collect one or more debts from Plaintiff Brown, Defendant filed a lawsuit against him in King George County General District Court.

17. In connection with the lawsuit, Defendant submitted an affidavit to King George General District Court that did not contain the required FDCPA disclosures, including the required disclosure that the communication was prepared by a debt collector in an attempt to collect a debt, and that any information obtained would be used for that purpose.

18. This affidavit represented that Plaintiff Brown owed $2,021.78 in principal and further represented that this amount did not include any interest.

19. This statement was false. Plaintiff Brown's principal balance was not $2,021.78. This amount included interest. Moreover, Plaintiff Brown did not owe $2,021.78 to anyone, including the Defendant.

20. Additionally, the affidavit contained numerous material falsehoods. This affidavit misrepresented that the affiant had personal knowledge of the account and that the affiant had reviewed the actual contract.

21. Upon information and belief, the affiant had no such personal knowledge nor did the affiant review the actual contract.

22. The Defendant manufactured this fraudulent affidavit because it knew that it could not prove Plaintiff Brown's indebtedness or ownership of the debt, and thus its entitlement to judgment in its favor, without it.

23.     Defendant also submitted to the General District Court (and mailed to Plaintiff Brown) an "account summary" stating that he owed $2,021.78 in principal and that this did not include any interest.

24.     This statement was false. This account summary was not created by the original creditor, or even CPS. Instead, CPS's law firm created it entirely for litigation purposes.

25.     Further, Plaintiff Brown's principal balance was not $2,021.78. This amount included interest.

26.     In order to obtain judgment against Plaintiff Brown, the General District Court relied upon the false collection affidavit that was presented to the General District Court judge when counsel for the Defendant asked for judgment on the (false) affidavit.

27.     Additionally, in an attempt to collect one or more accounts from Plaintiff Brown, Defendant made several other misrepresentations to him.

28.     Upon information and belief, Defendant was not entitled to collect the account(s) from Plaintiff Brown.

29.     After judgment was entered, the Defendant initiated a garnishment action in an attempt to collect the outstanding judgment.

30.     In this garnishment action, the Defendant attempted to collect funds that were not awarded by the Court when it issued the underlying judgment, or that were otherwise authorized by Virginia law, including but not limited to $71.00 in "judgment costs."

31.     On or around December 12, 2013, Defendant or its agent signed a Suggestion for Summons in Garnishment, certifying the Defendant's entitlement to $71.00 in judgment costs.

32.     This statement was false.  Defendant was not entitled to $71.00 in judgment costs.

33. False statements made on a Suggestion for Summons in Garnishment are actionable as crimes in Virginia.

34. The Defendant's submission of the falsified garnishment suggestion constituted a criminal offense, a Class 1 misdemeanor as per Virginia Code §8.01-511, and thus also violated the Fair Debt Collection Practices Act.

35. As a result of Defendant's actions, Plaintiff Brown suffered actual damages.

**Defendant's Specific Collection Conduct Regarding Chaundra Hutchinson**

36. The Defendant contends that Plaintiff Hutchinson incurred one or more financial obligations that were primarily for personal, family or household purposes.

37. These alleged debts were consigned, placed or otherwise transferred to Defendant for collection from Plaintiff Hutchinson.

38. In an attempt to collect one or more debts from Plaintiff Hutchinson, Defendant filed a lawsuit against her in Louisa County General District Court.

39. In connection with the lawsuit, Defendant submitted an affidavit to Louisa General District Court that did not contain the required FDCPA disclosures, including the required disclosure that the communication was prepared by a debt collector in an attempt to collect a debt, and that any information obtained would be used for that purpose.

40. This affidavit represented that Plaintiff Hutchinson owed $3,680.66 in principal and further represented that this amount did not include any interest.

41. This statement was false. Plaintiff Hutchinson's principal balance was not $3,680.66. This amount included interest. Moreover, Plaintiff Hutchinson did not owe $3,680.66 to anyone, including the Defendant.

6

42. Additionally, the affidavit contained numerous material falsehoods. This affidavit misrepresented that the affiant had personal knowledge of the account and that the affiant had reviewed the actual contract.

43. Upon information and belief, the affiant had no such personal knowledge nor did the affiant review the actual contract.

44. The Defendant manufactured this fraudulent affidavit because it knew that it could not prove Plaintiff Hutchinson's indebtedness or ownership of the debt, and thus its entitlement to judgment in its favor, without it.

45. In order to obtain judgment against Plaintiff Hutchinson, the General District Court relied upon the false collection affidavit that was presented to the General District Court judge when counsel for the Defendant asked for judgment on the (false) affidavit.

46. Additionally, in an attempt to collect one or more accounts from Plaintiff Hutchinson, Defendant made several misrepresentations to her.

47. Upon information and belief, Defendant was not legally entitled to collect the account(s) from Plaintiff Hutchinson.

48. As a result of Defendant's actions, Plaintiff Hutchinson suffered actual damages

**Defendant's Specific Collection Conduct Regarding James Timberlake**

49. The Defendant contends that Plaintiff Timberlake incurred one or more financial obligations that were primarily for personal, family or household purposes.

50. These alleged debts were consigned, placed or otherwise transferred to Defendant for collection from Plaintiff Timberlake.

51. In an attempt to collect one or more debts from Plaintiff Timberlake, Defendant filed a lawsuit against him in Spotsylvania County General District Court.

7

52.     In connection with the lawsuit, Defendant submitted an affidavit to Spotsylvania General District Court that did not contain the required FDCPA disclosures, including the required disclosure that the communication was prepared by a debt collector in an attempt to collect a debt, and that any information obtained would be used for that purpose.

53.     This affidavit represented that he owed $4,977.68 in principal and further represented that this amount did not include any interest.

54.     This statement was false. Plaintiff Timberlake's principal balance was not $4,977.68. This amount included interest. Moreover, Plaintiff Timberlake did not owe $4,977.68 to anyone, including the Defendant.

55.     Additionally, the affidavit contained numerous material falsehoods. This affidavit misrepresented that the affiant had personal knowledge of the account and that the affiant had reviewed the actual contract.

56.     Upon information and belief, the affiant had no such personal knowledge nor did the affiant review the actual contract.

57.     Defendant manufactured this fraudulent affidavit because it knew that it could not prove Plaintiff Timberlake's indebtedness or ownership of the debt, and thus its entitlement to judgment in its favor, without it.

58.     In order to obtain default judgment against Plaintiff Timberlake, the General District Court relied upon the false collection affidavit that was presented to the General District Court judge when counsel for the Defendant asked for judgment on the (false) affidavit.

59.     Additionally, in an attempt to collect one or more accounts from Plaintiff Timberlake, Defendant made several misrepresentations to him.

8

60.     Upon information and belief, Defendant was not legally entitled to collect the account(s) from Plaintiff Timberlake.

61.     As a result of Defendant's actions, Plaintiff Timberlake suffered actual damages

**Defendant's Specific Collection Conduct Regarding Phyllis Watson**

62.     The Defendant contends that Plaintiff Watson incurred one or more financial obligations that were primarily for personal, family or household purposes.

63.     These alleged debts were consigned, placed or otherwise transferred to Defendant for collection from Plaintiff Watson.

64.     In an attempt to collect one or more debts from Plaintiff Watson, Defendant filed a lawsuit against her in Prince Edward County General District Court.

65.     In connection with the lawsuit, Defendant submitted an affidavit to Prince Edward General District Court that did not contain the required FDCPA disclosures, including the required disclosure that the communication was prepared by a debt collector in an attempt to collect a debt, and that any information obtained would be used for that purpose.

66.     This affidavit represented that she owed $1,096.73 in principal and further represented that this amount did not include any interest.

67.     This statement was false. Plaintiff Watson's principal balance was not $1,096.73. This amount included interest. Moreover, Plaintiff Watson did not owe $1,096.73 to anyone, including the Defendant.

68.     Additionally, the affidavit contained numerous material falsehoods. This affidavit misrepresented that the affiant had personal knowledge of the account and that the affiant had reviewed the actual contract.

69.     Upon information and belief, the affiant had no such personal knowledge nor did the affiant review the actual contract.

70.     In fact, upon information and belief, the affiant, Stephanie Cappelli, did not even review or sign the Affidavit of Claim. Instead, another undisclosed individual endorsed it.

71.     Defendant manufactured this fraudulent affidavit because it knew that it could not prove Plaintiff Watson's indebtedness or ownership of the debt, and thus its entitlement to judgment in its favor, without it.

72.     In order to obtain judgment against Plaintiff Watson, the General District Court relied upon the false collection affidavit that was presented to the General District Court judge when counsel for the Defendant asked for judgment on the (false) affidavit.

73.     Additionally, in an attempt to collect one or more accounts from Plaintiff Watson, Defendant made several misrepresentations to her.

74.     Upon information and belief, Defendant was not legally entitled to collect the account(s) from Plaintiff Watson.

75.     As a result of Defendant's actions, Plaintiff Watson suffered actual damages

**Defendant's Specific Collection Conduct Regarding Lashun Williams**

76.     The Defendant contends that Plaintiff Williams incurred one or more financial obligations that were primarily for personal, family or household purposes.

77.     These alleged debts were consigned, placed or otherwise transferred to Defendant for collection from Plaintiff Williams.

78.     In an attempt to collect one or more debts from Plaintiff Williams, Defendant filed a lawsuit against her in Prince George County General District Court.

79.     In connection with the lawsuit, Defendant submitted an affidavit to Prince George General District Court that did not contain the required FDCPA disclosures, including the required disclosure that the communication was prepared by a debt collector in an attempt to collect a debt, and that any information obtained would be used for that purpose.

80.     This affidavit represented that Plaintiff Williams owed $18,556.54 in principal and further represented that this amount did not include any interest.

81.     This statement was false. Plaintiff Williams's principal balance was not $18,556.54. This amount included interest. Moreover, Plaintiff Williams did not owe $18,556.54 to anyone, including the Defendant.

82.     Additionally, the affidavit contained numerous material falsehoods. This affidavit misrepresented that the affiant had personal knowledge of the account and that the affiant had reviewed the actual contract.

83.     Upon information and belief, the affiant had no such personal knowledge nor did the affiant review the actual contract.

84.     Defendant manufactured this fraudulent affidavit because it knew that it could not prove Plaintiff Williams's indebtedness or ownership of the debt, and thus its entitlement to judgment in its favor, without it.

85.     Defendant also submitted to the General District Court (and mailed to Plaintiff Williams) an "account summary" stating that she owed $18,556.54 in principal and that this did not include any interest.

86.     This statement was false. This account summary was not created by the original creditor, or even CPS. Instead, CPS's law firm created it entirely for litigation purposes.

87.     Further, Plaintiff Williams's principal balance was not $18,556.54. This amount included interest.

88.     In order to obtain judgment against Plaintiff Williams, the General District Court relied upon the false collection affidavit that was presented to the General District Court judge when counsel for the Defendant asked for judgment on the (false) affidavit.

89.     Additionally, in an attempt to collect one or more accounts from Plaintiff Williams, Defendant made several misrepresentations to her.

90.     Upon information and belief, Defendant was not legally entitled to collect the account(s) from Plaintiff Williams.

91.     As a result of Defendant's actions, Plaintiff Williams suffered actual damages

**COUNT ONE:**
**VIOLATION OF 15 U.S.C. § 1692e(2):**
**(Class Claim Against Defendant CPS Only)**

92.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class initially defined as follows:

> All natural persons sued by Defendant Cavalry Portfolio Services, LLC, or its related entities (Cavalry SPV I, LLC, or Cavalry SPV II), in a Virginia General District Court within the one year period preceding the filing date of this Complaint in which the Defendant submitted an "Affidavit of Claim" that listed a principal balance that included interest charges.

93.     Plaintiffs incorporate their prior allegations and estimate that the class is so numerous that joinder of all members is impractical.

94.     Plaintiffs' counsel has reviewed a substantial number of affidavits prepared by Defendant CPS and later filed by CPS, Cavalry SPV I, LLC, or Cavalry SPV II in Virginia General District Courts. These documents have remained consistent and uniform across time, Virginia jurisdictions and consumers.

95.     There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  For example, and without limitation:  (a.) whether Defendant CPS routinely misrepresented principal balances on the affidavits it sent to consumers and filed with Virginia General District Courts; (b.) whether this conduct violated the FDCPA and (c.) what damages Plaintiffs and the putative class members are entitled to as a result of Defendant CPS's conduct.

96.     The claims of Plaintiffs are typical of those of the class members.  All are based on the same facts, form documents and legal theories.  The affidavits are standardized and used across all Virginia jurisdictions and the full class period.  The violations alleged are the same and the class claims will rise and fall entirely based upon whether or not Plaintiffs' claims rise or fall.

97.     The Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions.  Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

98.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.     As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member.  Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues.  Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually.  Further, most consumers who have been victims of the Defendant's conduct would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation.  Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources.  The issues at the core of this case are classwide and should be resolved at one time.  One win for one consumer would set the law as for every similarly situated consumer.

99.      Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendant CPS has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

100.      The Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e by its actions, which include, but are not limited to, using false, deceptive, or misleading representations or means in connection with the collection of debt.

101.      Plaintiffs and the putative class members are therefore entitled to an award of statutory damages against Defendant CPS, as well as their reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k.

**COUNT TWO:**
**VIOLATION OF 15 U.S.C. § 1692d(1)**
**(Plaintiff Brown's Individual Claim against CPS)**

102.      Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

14

103.    Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692d(1) by its actions, which include, but are not limited to, using criminal means to harm Plaintiff Brown.

104.    As a result of the actions taken by the Defendant, which include, but are not limited to, attempting to garnish funds that were not awarded in the underlying judgment, or which were not otherwise proper under Virginia law, the Defendant committed violations of Virginia Code § 8.01-511, an offense classified as a Class 1 misdemeanor.

105.    Plaintiff Brown is therefore entitled to actual and statutory damages against the Defendant, as well as his reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k.

**COUNT THREE:**
**VIOLATION OF 15 U.S.C. § 1692e**
**(Plaintiffs' Individual Claim against CPS)**

106.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

107.    The Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e by its actions, which include, but are not limited to, using false, deceptive, or misleading representations or means in connection with the collection of debt.

108.    Plaintiffs are therefore entitled to an award of statutory damages against Defendant as well as their reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k.

**COUNT FOUR:**
**VIOLATION OF 15 U.S.C. § 1692e(5)**
**(Plaintiff Brown's Individual Claim against CPS)**

109.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

15

110.   Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(5) by its actions, which include, but are not limited to, threatening to take legal action that could not legally be taken.

111.   Plaintiff Brown is therefore entitled to actual and statutory damages against Defendant, as well as his reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k.

**COUNT FIVE:**
**VIOLATION OF 15 U.S.C. § 1692e(10)**
**(Plaintiffs' Individual Claim against CPS)**

112.   Plaintiffs restates each of the allegations in the preceding paragraphs as if set forth at length herein.

113.   The Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(10) by its actions, which include but are not limited to, using a false representation as a means to collect a debt.

114.   Plaintiffs are therefore entitled to an award of statutory damages against Defendant, as well as their reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k.

**COUNT SIX:**
**VIOLATION OF 15 U.S.C. § 1692e(11)**
**(Plaintiffs' Individual Claim against CPS)**

115.   Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

116.   Defendant CPS violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(11) by its actions, which include but are not limited to, failing to disclose that the "Affidavit of Claim" it sent to the Plaintiffs and putative class members and filed with the Virginia General District Courts were from a debt collector.

117.    Plaintiffs are therefore entitled to an award of statutory damages against Defendant, as well as their reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k.

## COUNT SEVEN:
## VIOLATION OF 15 U.S.C. § 1692f(1)
### (Plaintiffs' Individual Claim against CPS)

118.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

119.    The Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1) by its actions, which include, but are not limited to, the collection of an amount that is not permitted by law.

120.    Plaintiffs are therefore entitled to an award of statutory damages against Defendant, as well as their reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k.

## COUNT EIGHT:
### Virginia Abuse of Process
### (Plaintiffs' Individual Claim against CPS)

121.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

122.    Defendant's filing of the state court collection lawsuit and improper use of the affidavits was accomplished with the improper motive and purpose of obtaining a judgment on a debt that it could not confirm or know was actually owed by the Plaintiffs and was accomplished through the improper use of a false affidavit as means to circumvent the impossible burdens faced if it actually had to prove an indebtedness.

123.    Defendant conducted itself in this manner with intent to defraud and with legal and actual malice as to the Plaintiffs and to the King George, Louisa, Spotsylvania, Prince Edward, and Prince George General District Courts.  The Plaintiffs are therefore entitled to and

17

Defendant is obligated to pay punitive damages.

124.   As a result of the Defendant's abuse of process, the Plaintiffs suffered actual damages.

125.   Plaintiffs are therefore entitled to an award of punitive and actual damages against Defendant, as well as their reasonable attorneys' fees and costs, pursuant to Virginia law.

WHEREFORE, Plaintiffs respectfully request judgment against the Defendant for actual, statutory, and punitive, damages, attorneys' fees and costs, pursuant to the Fair Debt Collection Practices Act and Virginia common law for their individual claims, as well as class certification under Rule 23 for Plaintiffs' class allegations against CPS, and an award of statutory damages, attorneys' fees and costs to the Plaintiffs and putative class members against Defendant CPS under the Fair Debt Collection Practices Act, and such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**PLAINTIFFS, *on behalf of themselves and all others similarly situated***

By _____
                    Of Counsel

Matthew J. Erausquin, VSB No. 65434
Casey S. Nash, VSB No. 84261
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:   (703) 273-7770
Fax:   (888) 892-3512
matt@clalegal.com
casey@clalegal.com

18